## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SENTINEL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17 C 1501 |
| | ) | |
| BEACH FOR DOGS CORPORATION; | ) | |
| BEACH FOR DOGS AURORA, INC.; | ) | |
| STEVE HOLLAND, Individually and d/b/a | ) | |
| BEACH FOR DOGS; and | ) | |
| WOOFBEACH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

On February 22, 2017, Sentinel Insurance Company ("Sentinel") filed a Complaint against Beach for Dogs Corporation ("BFD"), Beach for Dogs Aurora ("BFD Aurora"), and Steve Holland, individually and d/b/a Beach for Dogs ("Holland") (collectively, "Beach for Dogs"). The Complaint seeks declaratory judgment on ten claims concerning Sentinel's duty to defend and cover Beach for Dogs in an underlying lawsuit ("*Woofbeach* suit"). On April 28, 2017, Beach for Dogs answered the Complaint and filed a four-count Counterclaim against Sentinel.

Now before the Court are the parties' cross-motions for summary judgment. Beach for Dogs seek partial summary judgment on the following two counts from their Counterclaim. Count I: Declaratory Judgment of Sentinel's Duty to Defend and

Indemnify Beach for Dogs in the *Woofbeach* suit; Count II: Judgment that Sentinel was in Breach of Contract. In turn, Sentinel requests summary declaratory judgment in its favor on the following five counts from its Complaint. Count I: No "Bodily Injury" or "Property Damage" Caused by an "Occurrence"; Count II: No "Personal and Advertising Injury"; Count V: BFD Aurora is Not an Insured Under the Sentinel Policy; Count VII: Intellectual Property Exclusion Precludes Coverage; and Count X: Personal and Advertising Exclusion in the Excess Umbrella Coverage Precludes Coverage.

## **BACKGROUND**

The following facts taken from the record are undisputed, except where otherwise noted.

### **I. Underlying *Woofbeach* Suit**

On November 3, 2016, Woofbeach, Inc. ("Woofbeach") filed a complaint against Beach for Dogs in a suit styled *Woofbeach, Inc. v. Steve Holland, Individually and d/b/a Beach for Dogs, Beach for Dogs Aurora, Inc., and Beach for Dogs Corporation*, Case No. 16-cv-10315 ("*Woofbeach* suit"), currently pending in the U.S. District Court for the Northern District of Illinois. At the heart of the *Woofbeach* suit is a dispute about the appearance of two logos, one utilized by

Woofbeach and another by Beach for Dogs. Paragraphs 29 and 30 of Woofbeach's first amended complaint[1] allege:

> 29. Exhibit C, attached hereto, consists of marketing materials in the form of door hanger advertisements respectively distributed by Woofbeach and Beach for Dogs. The door hanger on the left side of Exhibit C includes the Woofbeach Word Mark as well and the Woofbeach Design Mark; the door hanger on the right in Exhibit A includes the Beach for Dogs name and logo and reflects the confusingly similar name and design elements, in addition to the similarities in the layout of the advertisement.

> 30. Woofbeach began using its door hangers in marketing its services in late 2014 and, on information and belief, Beach for Dogs began using its door hanger sometime in 2016.

Contrary to the allegation in Woofbeach's first amended complaint, Sentinel states that Beach for Dogs began using their logo sometime in 2015. Beach for Dogs deny that they began using the logo that year.

Woofbeach also includes allegations of injury that extend beyond the mere utilization of the logo in the door hangers. The most obvious of such allegations are as follows:

> 20. Holland's ongoing use of the "Beach for Dogs" business name and a logo containing nearly identical graphic elements as the Woofbeach Design Mark is deceptive and creates a likelihood of confusion in the minds of consumers as to a possible affiliation or connection of Beach for Dogs with Woofbeach and thereby trades on the goodwill and infringes the rights of Woofbeach in its service marks.

> 23. The "Beach for Dogs" name and related logo are confusingly similar to the Woofbeach Word Mark and Woofbeach Design Mark and,

---

[1] While the Court's opinion cites from Woofbeach's first amended complaint, we note that the language of each cited provision from the first amended complaint can be found in identical form in Woofbeach's initial complaint, as well.

on information and belief, Holland's use of the Beach for Dogs name and logo has resulted in instances of actual consumer confusion between the two businesses.

27. The continued use of the name, "Beach for Dogs" and related logo by Holland will continue [to] cause confusion in the minds of the consuming public as to the existence of a relationship between Woofbeach's dog training and grooming business and Holland's business….

Count I of the *Woofbeach* suit, which states a trademark infringement claim, also refrains from discussing the door hangers. It instead requests relief for Beach for Dogs' alleged current and continued infringement "upon Woofbeach's Service Marks by the continued operation of [the] business under the name 'Beach for Dogs'" and "the promotion of its dog training and grooming business through the use of confusingly similar 'Beach for Dogs' name and logo containing design elements, namely the silhouette of a dog and palm tree…."

Finally, Woofbeach's first amended complaint states the following four claims. Count I: Trademark Infringement under 15 U.S.C. §1125(a); Count II: violation of 815 ILCS 510/2, the Illinois Uniform Deceptive Trade Practices Act; Count III: violation of 815 ILCS 505/2, the Illinois Consumer Fraud and Deceptive Trade Practices Act; and Count IV: Tortious Interference with Prospective Economic Advantage.

## II. Relationship Between Sentinel and Beach for Dogs as Insurer/Insured

At some point prior to the filing of this or the underlying *Woofbeach* suit, Sentinel issued to Beach for Dogs a policy of insurance bearing policy number 83

SBA NX5414 SA ("Policy"), effective from April 10, 2016, to April 10, 2017. The germane portion of the Policy sets forth language excluding Sentinel from having to cover an insured where specific intellectual property concerns manifest in an underlying lawsuit. This Intellectual Property Exclusion ("IP Exclusion") can trigger depending on the nature of the alleged "Personal and Advertising Injury." The relevant provision states as follows:

### B. EXCLUSIONS

**1. Applicable to Business Liability Coverage**

This insurance does not apply to:

\*  \*  \*

**p. Personal and Advertising Injury**

"Personal and advertising injury":

\*  \*  \*

**(7) (a)** Arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark, or other designation or origin or authenticity; or

**(7) (b)** Any injury or damages alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply

An exception ("Exception") written into the Policy can override the operation of the IP Exclusion in narrow instances. It reads as follows:

However, this exclusion does not apply if the only allegation in the claim or suit involving any intellectual property right is limited to:

    **(1)** Infringement, in your "advertisement", of:

        **(a)** Copyright;
        **(b)** Slogan; or
        **(c)** Title of any literary or artistic work; or

    **(2)** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement"

Finally, the Policy provides the following contractual definition of the term "advertisement":

1. "Advertisement" means the widespread public dissemination of information or public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

    a.
        (1)  Radio

        (2)  Television;

        (3)  Billboard;

        (4)  Magazine;

        (5)  Newspaper

    b.  The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or

    c.  Any other publication that is given widespread public distribution.

On December 15, 2016, Beach for Dogs notified Sentinel of the *Woofbeach* suit and requested from Sentinel a defense. On January 9, 2017, BFD and BFD Aurora filed a counterclaim against Woofbeach in the *Woofbeach* suit. Five days after Sentinel filed its February 22 Complaint in the instant action, Sentinel sent Beach for Dogs a letter dated February 27, 2017, denying the request for a defense. On March 1, 2017, Woofbeach filed an amended complaint in the underlying action.

Thereafter, on March 16, 2017, Beach for Dogs explained to Sentinel why Sentinel's position on a defense under the Policy was wrong and again requested a defense in the *Woofbeach* suit. Although Beach for Dogs renewed their Policy with Sentinel via a new liability policy bearing policy number 83 SBA N5414, effective from April 10, 2017. to April 10, 2018, Sentinel has continued to refrain from defending Beach for Dogs in the *Woofbeach* suit. On April 15, 2017, Beach for Dogs filed an amended counterclaim against Woofbeach and two other defendants in the underlying suit.

## LEGAL STANDARD

For cross-motions for summary judgment, the Court must "look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively establish a genuine issue of material fact." *Santanella v. Metro Life Ins. Co.,* 123 F.3d 456, 461 (7th Cir. 1997). Our factual and inferential construction is unaltered by the procedural nuance of cross-filings, for each party retains their "respective burdens on cross-motions for summary judgment."

*McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 Fed.Appx. 92, 95 (7th Cir. 2012).

The parties agree that Illinois law governs this action. "Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) (internal citation and quotation marks omitted). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *State Farm Fire & Casualty Co. v. Perez*, 387 Ill.App.3d 549, 553 (2008). "However, this general rule favoring the insured must yield to the paramount rule of reasonable construction which guides all contract interpretations." *Western States Ins. Co. v. Bobo*, 268 Ill.App.3d 513, 516 (1994).

## DISCUSSION

Preliminarily, the Court notes that the factual record in this action is by and large not in dispute. Rather, the parties have asked the Court to determine legal issues

arising from the plain language of both complaints in the *Woofbeach* suit as well as the Policy. As our recitation of the legal standard highlights, such an issue is properly addressed via summary judgment.

The Court granted the parties leave to file summary judgment on the issue of Sentinel's duty, or lack thereof, to defend Beach for Dogs in the underlying *Woofbeach* complaint. Nonetheless, both parties raise a number of issues in their briefs that tread beyond the coverage question. The Court declines to address such improperly raised adjacent matters; our analysis here is confined to the duty to defend issue.

As to the germane inquiry, the parties identify two questions that, if answered affirmatively in either case, would obviate Sentinel's duty to cover Beach for Dogs. First, is the alleged injury to Woofbeach, as caused by the hanging of door hangers, included in the IP Exclusion's consideration of an "Advertising Injury"? Second, do the allegations of the *Woofbeach* suit fail to trigger the Exception such that the IP Exclusion kicks in to preclude coverage? Because resolution of the second query settles this matter definitively, unambiguously, and in accordance with both the Policy's plain language and exceedingly on-point case law, we address it alone.

Beach for Dogs rely heavily on Woofbeach's claims of copyright infringement to try and circumvent the IP Exclusion clauses. Curiously, while Beach for Dogs admit that "Woofbeach's trademark or service mark infringement claims would be excluded by operation of ¶7(a)" of the Policy, they do not bother to identify which of

Woofbeach's particular claims would be excluded from coverage per this concession. Regardless, it is evident to the Court that exclusion would attach to any claims tied to the allegations of ¶¶20, 23, and 27 of the first amended complaint, as reprinted *supra*. Beach for Dogs contend that, while the plain language of ¶7(a) would exclude coverage of those specific trademark claims, ¶7(a) exclusion would not extend to Woofbeach's "additional allegations of copyright infringement." Rather, Sentinel would be required to defend against the additional copyright claims, since those fit squarely within the Exception, and the Exception mandates a defense where copyright infringement is the only allegation that attends the purported injury.

Paragraph 7(b) of the IP Exclusion is broader, operating not only to preclude coverage of specific claims, but of any "'suit' that also alleges an infringement or violation of any intellectual property right…." Once again, Beach for Dogs rely on the *Woofbeach* suit's allegations of copyright infringement to argue that the Exception steps in. Because "the *Woofbeach* Complaint asserts a claim against [Beach for Dogs] for copying Woofbeach's layout and design of its door hanger…separate and apart from Woofbeach's trademark claims," Beach for Dogs contend that the Exception trumps the IP Exclusion and a defense is required on the copyright claims.

Unfortunately for Beach for Dogs, the logic they employ to argue against application of the IP Exclusion works against them, essentially functioning to trigger the Exclusion and avert operation of the Exception. On multiple occasions, Beach for Dogs concede that Woofbeach has alleged at least two distinct batches of claims, one

flowing from trademark and service mark infringements, and another flowing from copyright infringement. The existence of two distinguishable legal claims does not, however, bifurcate the pair where Sentinel's duty to defend comes into play. At the risk of repeating ourselves one time too many, the IP Exclusion states that the "insurance does not apply… to any claim or "*suit*" that also alleges an infringement or violation of any intellectual property right" (emphasis added). By the express language of the IP Exclusion, the existence of the trademark allegations precludes coverage for the *entire* underlying lawsuit.

Finally, the Exception fails to trigger for essentially the same reasons we have just outlined. Paragraph 7(b) activates exclusion of any "suit" that includes an alleged intellectual property right unless "the *only* allegation in the claim or suit" flows from a copyright violation (emphasis added). By conceding that the *Woofbeach* suit includes allegations of trademark infringement alongside copyright infringement, Beach for Dogs admit that the Exception, by its own terms, does not trigger to override the IP Exclusion.

Notably, in this same district, courts have recently held this very provision to operate in precisely the way the Court now finds. *See Sentinel Ins. Co., Ltd. v. Yorktown Industries, Inc.*, 2017 WL 446044, *4 (N.D. Ill. Feb. 2, 2017) ("even if not every claim in the [underlying action] arose out of an intellectual property violation, coverage would be excluded because at least one claim…clearly alleges an excluded intellectual property claim"); *and Hartford Casualty Ins. Co. v. Dental USA, Inc.*,

2014 WL 2863164, *4 (N.D. Ill. Jun. 24, 2014) (where "allegations of infringement of patent and trademark rights" were alleged in the underlying counterclaims, coverage for the underlying suit was precluded).

Moreover, as Sentinel thoroughly outlines, at least four other federal districts around the country have issued virtually identical substantive rulings in cases of eminently similar posture. *See Vitamin Health, Inc. v. Hartford Casualty Ins. Co.*, 186 F.Supp.3d 712, 720 (E.D. Mich. 2016) ("subsection (7)(b) of the above exclusion clearly and unambiguously bars coverage in situations where, as here, a claim of false advertising is alleged in the same complaint alleging patent infringement"); *Pinnacle Brokers Ins. Solutions LLC v. Sentinel Ins. Co., Ltd.*, 2015 WL 5159532, *4 (N.D. Cal Sep. 2, 2015) (internal citation and quotation marks omitted) (the "conspicuous, plain and clear" language of the IP Exclusion barred coverage where the underlying suit alleged trade secret violations); *Tria Beauty, Inc. v. National Fire Ins. Co. of Hartford*, 2013 WL 2181649, *8 (N.D. Cal. May 20, 2013) (the insurer had no duty to defend because the IP Exclusion "exempted not only trademark infringement claims, but also suits on other claims that also allege trademark infringement"); *Ventana Medical Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*, 709 F.Supp.2d 744, 758 (D. Ariz. 2010) (where the insurer "intended to exclude from its general liability policy…any damages that arise from any other claims when a claim of intellectual property is asserted," no duty to defend in underlying case that alleged both intellectual property and patent infringements); *and Molecular Byproducts, Inc. v. St.*

*Paul Mercury Ins. Co.*, 2003 WL 23198852, *5 (S.D. Cal. July 9, 2003) (where "all of [the underlying plaintiff's] counterclaims are alleged in a suit that also alleges violations of the patent laws," the IP Exclusion precludes coverage for the entire underlying suit).

The IP Exclusion is clear, explicit, and resoundingly settled as a matter of law throughout the country as operating to preclude coverage in underlying suits just like that at issue here. Sentinel has no duty to defend Beach for Dogs in the *Woofbeach* suit, and is entitled to summary judgment thereupon. Because the IP Exclusion definitively resolves the matter, the Court will not address Beach for Dogs' arguments as to whether the door hangers fall within the Policy's definition of "advertising."

## CONCLUSION

For the aforementioned reasons, the Court finds that Sentinel has no duty to defend Beach for Dogs in the underlying *Woofbeach* suit. Because there is no coverage available to Beach for Dogs, summary judgment in the entire case is granted in Sentinel's favor. It is so ordered.

Dated: 12/21/2017

Charles P. Kocoras
United States District Judge